UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GABRIELE E. VERROCCHIO,

                        Plaintiff,

                                         3:09-cv-1376

    v.

FEDERAL EXPRESS CORPORATION,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Gabriele Verrocchio commenced the instant action against Defendant Federal Express Corporation asserting a claim for violation of the Americans with Disabilities Act ("ADA"), and a claim for breach of contract. Presently before the Court is Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of the Complaint in its entirety.

**I.   FACTS[1]**

Plaintiff Gabriele Verrocchio began working for Defendant Federal Express Corporation in 1983. On December 23, 2006, Plaintiff was working as a courier. On that date, he was rear-ended by another vehicle in a work-related accident. The accident caused multiple injuries to Plaintiff, resulting in his taking a medical leave of absence from work.

Plaintiff pursued a workers' compensation claim as a result of the accident. In July 2007, Plaintiff underwent an independent medical examination ("IME"). The IME report

---

[1] The following facts are taken from the Complaint and, for purposes of Defendant's motion to dismiss, are assumed to be true.

indicated that Plaintiff was medically unable to return to his position as a courier, but that he could "return to light duty using mainly right upper extremity if available." In August 2007, two of Plaintiff's medical providers indicated in documents that Plaintiff would be unable to work until at least the end of September 2007. These "out of work orders" were faxed to Defendant.

On or about August 24, 2007, Defendant notified Plaintiff that he was required to report to work on August 28, 2007 for a Temporary Return to Work Assignment ("TWA") with limitations. Plaintiff did not report to work for the TWA.

By letter dated September 4, 2007, Plaintiff was again advised to report to work for a TWA on September 10, 2007. The letter stated that Plaintiff was expected to provide proof of his inability to perform his job. Plaintiff did not report for the TWA. Plaintiff did contact Defendant and, on September 6, 2007, Plaintiff's physician provided Defendant with a list of restrictions.

On or about September 14, 2007, Defendant sent Plaintiff a letter of termination, citing his failure to report for the TWA. Plaintiff was advised of his right to appeal the termination through Defendant's "Fair Treatment Process." Plaintiff, through his attorney, appealed the termination claiming that Plaintiff was medically "unable to return to work until at least the end of September, 2007, with specific limitations." Plaintiff's appeal was denied.

Plaintiff filed a charge of discrimination with the New York Division of Human Rights. The New York Division of Human Rights found that probable cause existed that Defendant engaged in an unlawful discriminatory employment practice.

Plaintiff then commenced the instant action claiming that he was discriminated against on account of his injuries in violation of the Americans with Disabilities Act and that

Defendant breached the employment contract.  Presently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**II.     STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 1949-50 (internal quotations and citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." Id. at 1950 (internal citations and quotation omitted).

**III.    DISCUSSION**

   **a.    Americans With Disabilities Act**

Defendant moves to dismiss the ADA claim on the grounds that: (1) Plaintiff's physicians stated that he was unable to work and, therefore, he is not a qualified individual with a disability within the meaning of the ADA; and, alternatively, (2) if Plaintiff was able to return to work, he was lawfully terminated because he did not perform an essential function of the job (*i.e.* showing up for work).  Plaintiff responds that he suffers from both temporary and permanent disabilities, Defendant did not give Plaintiff the chance to recover from his

injuries by affording him additional medical leave, "Plaintiff's physician merely stated that he could not return to duty before the end of September," and "before the termination letter was sent to Plaintiff, one of his physicians stated he could return to work with certain restrictions."

To make out a prima facie case under the ADA, Plaintiff must show that he suffers from a disability within the meaning of the ADA, that he can perform the essential functions of the job with or without reasonable accommodation, and that his disability was the reason for his termination. Reeves v. Johnson Controls World Servs., 140 F.3d 144, 149-50 (2d Cir. 1998).

The Complaint alleges that Plaintiff "became disabled and unable to work as a courier." Compl. at ¶ 30. It is further claimed that Plaintiff's "injuries became worse over time, and he was unable to work as a courier, although he tried to do so." Id. Two of Plaintiff's doctors concluded that "Plaintiff would be unable to work until at least the end of September 2007." Id. at ¶ 18. "Plaintiff twice faxed medical reports to . . . [Defendant] . . . [which] detailed Plaintiff's condition, and clearly stated that Plaintiff was unable to return to work." Id. at ¶ 34. These medical reports were sent to Defendant before the letters demanding that he return to work on light duty and before the September 14, 2007 termination letter. The Complaint also attacks the IME report that concluded that Plaintiff could return to work on the ground that Plaintiff's "right arm was not available for work." Id. at ¶ 33. Plaintiff did not report for TWA because of his inability to work. Id. at ¶¶ 19-20, 35. Plaintiff appealed his termination, again claiming that he was "unable to return to work until at least the end of September, 2007." Id. at ¶ 22.

It is clear from the Complaint that Plaintiff is alleging he was unable to return to work when his employment was terminated. Assuming that Plaintiff was unable to return to

work prior to his termination, then he was not able to perform his job without an accommodation. The ability to attend the job is an essential function thereof. Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445 (8th Cir. 1998). If, as the Complaint alleges, Plaintiff was unable to work on September 14, 2007, he could not perform the essential functions of the job without accommodation. See Barnett v. Revere Smelting & Refining Corp., 67 F. Supp.2d 378, 391 (S.D.N.Y. 1999); Nowak v. St. Rita High School, 142 F.3d 999, 1002-04 (7th Cir. 1998) (employee who was absent for 18 months prior to termination was not a "qualified individual" under ADA); Nesser, 160 F.3d at 445-46 (employee could not perform essential functions of the job because he was unable to attend work on a regular basis); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) ("When [the plaintiff] was terminated . . . he acknowledges that he was unavailable for work, recuperating from surgery. . . . In fact, [the plaintiff] remained unavailable for work until released by his physician in December of 1993. Because [the plaintiff] could not attend work, he is not a 'qualified individual with a disability' under the ADA."); Carr v. Reno, 23 F.3d 525, 529-30 (D.C.Cir.1994) (employee was not protected by the Rehabilitation Act where she missed over 460 hours of work in the year prior to dismissal); Bobrowsky v. New York City Bd. of Educ., No. 97CV874, 1999 WL 737919 (E.D.N.Y. Sep. 16, 1999) (employee who took 17 absences during year not qualified within the meaning of the ADA); Daddazio v. Katherine Gibbs School, Inc., No. 98 Civ. 6861, 1999 WL 228344 (S.D.N.Y. Apr.20, 1999) (plaintiff who told employer that he would be incapacitated for "indefinite period of time" after being hospitalized not otherwise qualified); see also Potter v. Xerox Corp., 1 Fed. Appx. 34, 36 (2d Cir. 2001).

That leaves the question of whether Plaintiff could perform the essential functions of the job with accommodation. Indeed, the Complaint claims that Defendant "displayed

discrimination . . . by not allowing Plaintiff sufficient medical leave. . . ." Compl. at ¶ 29. This raises a failure to accommodate claim - that Plaintiff could have performed the essential functions of job if he was allowed more medical leave.

The Second Circuit has held that the ADA does not impose upon employers the obligation to allow for **indefinite** leave. Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 9 (2d Cir. 1999). The Second Circuit has "never expressly held that leaves of absence from an employee's job in order to recover from the employee's disability are 'reasonable accommodations' under the ADA." Graves v. Finch Pruyn & Co., Inc., 2009 WL 3850437 (2d Cir. Nov. 17, 2009) (unpublished); Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 185 n.5 (2d Cir. 2006). "[T]he idea of unpaid leave of absence as a reasonable accommodation presents a 'troublesome problem, partly because of the oxymoronic anomaly it harbors.'" Graves, 457 F.3d at 185 n.5 (quoting Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638 (1st Cir. 2000) (O'Toole, J., dissenting)). Many circuit courts have held that "a period of leave can in some circumstances be a reasonable accommodation required of an employer under the ADA." Garcia-Ayala, 212 F.3d at 652.

> The term "leave" is a capacious one, however, and the cases do not hold that any leave will qualify as a reasonable accommodation. See Walsh v. United Parcel Serv., 201 F.3d 718, 726-27 (6th Cir. 2000) (finding leave requested by plaintiff "objectively unreasonable"). "Reasonable accommodation" is also a capacious term, purposefully broad so as to permit appropriate case-by-case flexibility. Whether a particular proposed leave is a reasonable accommodation must be answered in the factual context of the case at hand.

Id.

Here, Defendant afforded Plaintiff nine months of leave before his employment was terminated. The Complaint can be read to say that Plaintiff may have been able to return to work after September 2007, see Compl. at ¶ 22. These allegations plausibly suggest that

- 6 -

Plaintiff may have been a qualified person within the meaning of the ADA.  If additional medical leave would have enable to Plaintiff to perform the essential functions of the job, then it is arguable that he was a "qualified individual with a disability."  Whether Plaintiff could have performed the essential functions of the job as of October 2007 or whether additional medical leave was reasonable cannot be answered on the instant motion to dismiss.

For the foregoing reasons, the Court finds that Plaintiff has stated a claim for a violation of the ADA.

### b.    Breach of Contract

Plaintiff next alleges that Defendant breached the parties' contract, which allows Plaintiff up to thirty months of medical leave.  Plaintiff claims that the contract was breached because Defendant did not afford him additional medical leave.  Defendant moves to dismiss this claim on the ground that, under New York law, any language in its employee handbook does not establish contractual rights or obligations unless, among other things, Plaintiff can show that he detrimentally relied upon those policies in accepting his employment. Defendant also contends that the handbook does not guarantee an employee a full thirty months of medical leave, but only allows up to thirty months of leave.

The Complaint alleges that Defendant had written policies concerning medical leave that were communicated to Plaintiff in writing, these policies formed a contract, the policies provided Plaintiff was entitled to up to thirty months of medical leave, Plaintiff provided medical documentation supporting his entitlement to additional medical leave, and Defendant breached the contract by terminating his employment after only nine months of medical leave.  Although Defendant correctly sets forth the applicable law, and the allegations in the Complaint concerning this cause of action are weak, the Court finds that it

adequately states a plausible claim for relief.  Whether a contract concerning medical leave exists and, if so, whether it was breached can better be tested on a motion for summary judgment or at trial.

### IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

Dated: February 17, 2010

_____
Thomas J. McAvoy
Senior, U.S. District Judge