# EXHIBIT B

**Original Transcript**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GABRIELE E. VERROCCHIO,

        Plaintiff(s),

    vs.                          Index No.3:19-CV-01376

TJM-DEP FEDERAL EXPRESS
CORPORATION,

        Defendant(s).

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DEPOSITION OF**

**ALAN C. WINSHIP**

January 6, 2011
10:09 a.m.

40 Gardenville Parkway
Suite 200,
West Seneca, New York 14224

DEBORAH DELELYS, Court Reporter and Notary Public



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044
Telephone:

2700 Centennial Tower
101 Marietta Street
Atlanta GA 30303
www.esquiresolutions.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------
GABRIELE E. VERROCCHIO,

                              Plaintiff(s),

    -against-         Index No.3:19-CV-01376


TJM-DEP FEDERAL EXPRESS CORPORATION,

                              Defendant(s).
----------------------------------------


                DEPOSITION OF:

                ALAN C. WINSHIP

        HELD:  THURSDAY, JANUARY 6, 2011

        LOCATION:  WEST SENECA, NEW YORK










REPORTED BY:  DEBORAH DELELYS



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

2

1

2    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF NEW YORK
3    ---------------------------------------
     GABRIELE E. VERROCCHIO,
4

5                              Plaintiff(s),

6      -against-          Index No.3:19-CV-01376

7

8    TJM-DEP FEDERAL EXPRESS CORPORATION,

9                              Defendant(s).
     ---------------------------------------
10

11           This is the DEPOSITION of ALAN C.

12   WINSHIP herein, held at WINSHIP & ASSOCIATES,

13   located at 40 GARDENVILLE PARKWAY, SUITE 200,

14   WEST SENECA, NEW YORK 14224, commencing at 10:09

15   A.M., on THURSDAY, JANUARY 6, 2011, before

16   DEBORAH DELELYS, Court Reporter and Notary

17   Public in and for the State of New York.

18

19

20

21

22

23

24

25



Alan C. Winship                                    January 6, 2011

3

1

2       APPEARANCES:

3

4       FEYI O. GAJI, ESQ.
        36 Oak Street
5       Binghamton, New York 13905
        Appearing for the Plaintiff

6

7

8

        FEDERAL EXPRESS CORPORATION
9       LEGAL DEPARTMENT
        BY:   SARAH F. HENRY, ESQ.
10      3620 Hacks Cross Road
        Building B, 3rd Floor
11      Memphis, Tennessee 38125-8800
        Appearing for the Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25



4

1                    A. Winship

2          THIS IS THE DEPOSITION of ALAN C.

3     WINSHIP herein, on THURSDAY, JANUARY 6, 2011,

4     before DEBORAH DELELYS, a Court Reporter and

5     Notary Public in and for the State of  New York.

6

7                 *  *  *  *  *  *  *

8                 ALAN C. WINSHIP

9          called as the witness, hereinbefore

10    named, being first duly cautioned and sworn or

11    affirmed by DEBORAH DELELYS, the Court Reporter

12    and Notary Public herein, to tell the truth, the

13    whole truth, and nothing but the truth, was

14    examined and testified as follows:

15    EXAMINATION BY

16    MS. HENRY:

17        Q     Would you please state your name for

18              the record.

19        A     Alan C. Winship.

20        Q     Would you please state your address

21              for the record.

22        A     40 Gardenville Parkway, Suite 200,

23              West Seneca, New York 14224.

24        Q     Mr. Winship, we're here on January the

25              6th of 2011, and you're here pursuant



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

5

                              A. Winship

1

2                to Subpoena, correct?

3         A      That's correct.

4         Q      And the Subpoena instructed you to

5                have all of the records and the

6                documents that you relied on in

7                generating your opinions in this case.

8                Do you have those with you today?

9         A      I do.

10        Q      Okay.  I noticed you have printed off

11               a list of papers that I'm not familiar

12               with.  One of them obviously looks

13               like your resume.

14               May I look at whatever documents

15               you're holding?

16        A      Sure.  It's the two reports I've

17               generated.

18        Q      Have you made any changes to the

19               reports that you generated between

20               what you produced to Mr.  Gaji in this

21               case and what you're holding today?

22        A      No.

23        Q      If you wouldn't mind, since I've got a

24               copy of those, I prefer to have you

25               look at my copy just to be sure there



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

1                          A. Winship

2               are no discrepancies.  I appreciate

3               you printing off your own copy.

4        A      Sure.

5        Q      Just as a formal legal matter I'd

6               rather you look at what I've been

7               given just to make sure we're all on

8               the same page.

9        A      That's fine.

10       Q      And understand, then, this deposition

11              has been rescheduled twice.  It was

12              originally scheduled for December the

13              1st and was cancelled due to discovery

14              issues, is that your awarement?

15       A      My understanding is it's been

16              cancelled three times.

17       Q      Okay.  Was it scheduled before the

18              December 1st date in your

19              recollection?

20       A      You know, I don't have all the dates

21              in front of me.

22       Q      Okay.  Do you remember it being

23              scheduled on December 1st and being

24              cancelled?

25       A      Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

7

1                          A. Winship

2        Q    Okay.  And do you remember it being

3             rescheduled for December the 28th?

4        A    Yes.

5        Q    And you remember that one being

6             cancelled due to weather constrictions

7             on my part?

8        A    Yes.

9                          MS. HENRY:  Okay.  I'm

10                    go to pass you what is

11                    going to be marked as

12                    Exhibit 1.

13                 (At which time, Exhibit 1, Copy of

14                 original Vocational Evaluation, was

15                 marked for identification.)

16       BY MS. HENRY:

17       Q    Mr. Winship, you are being passed

18             what's been marked Exhibit 1, which

19             looks to be a copy of your report.

20             Would you review that and verify that

21             that is a copy of your original

22             vocational evaluation.

23       A    Yes, it is.

24       Q    Okay.  And the first sentence of your

25             report says that you were, or you are



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                              January 6, 2011

8

```
 1                    A. Winship
 2            rendering a vocational evaluation and
 3            opinion regarding Mr. Verrochio's
 4            earning capacity.
 5            Is that what you intended to do with
 6            this vocational evaluation that you
 7            conducted?
 8       A    Yes.
 9       Q    Are these -- is this the only type of
10            opinion that you were hired to render
11            as an expert in this particular
12            lawsuit?
13       A    I was hired to render an opinion,
14            that's a standard sentence in all of
15            my reports.  I was hired to render an
16            opinion with regard to Mr.
17            Verrochio's capacity for employment,
18            and if he is employable to provide on
19            opinion with regard to his earning
20            capacity.
21       Q    Okay.  So you're not here today to
22            render any legal opinions; is that
23            correct?
24       A    That's correct.
25       Q    And what was provided to me for you,
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

                                                                    9

                            A. Winship

1                           attached a copy of your resume, and I

2                           believe the last sheets of that

3                           Exhibit 1.  If you wouldn't mind

4                           turning to the last four sheets, which

5                           should be your resume.

6        A        Actually the resume's kind of stapled

7                           in with some other materials in my

8                           copy, it's not the last two pages.

9                           There's some vocational references

10                          after it.

11       Q        Okay.  So it's the last two pages?

12       A        No, it's not.

13       Q        I'm sorry.  The second to last two

14                          pages?

15       A        Yes.  The vocational references just

16                          came apart, by those were the last two

17                          pages.  My resume was the third and

18                          fourth last page.

19       Q        Is your resume two pages long?

20       A        Yes, it is.

21       Q        Okay.  Actually, if you'll keep them

22                          in a collective exhibit.  I hate to be

23                          lawyerly with you, but it's a

24                          collective exhibit and the order.  Are



ESQUIRE
an Alexander Gallo Company

Alan C. Winship                    January 6, 2011

10

```
 1                    A. Winship
 2           there any changes that need to be made
 3           to this resume that was produced?
 4      A    No.
 5      Q    Okay.  Will you describe what your
 6           day-to-day practice is at Winship &
 7           Associates?
 8      A    Well, my day-to-day practices is
 9           fairly multi-faceted.  I do some legal
10           consulting such as this matter where I
11           render an opinion on employability and
12           earning capacity.  I prepare life care
13           plans in litigated cases.  I do
14           Medicare set-asides.  I'm a licensed
15           mental health counselor as well as a
16           certified rehabilitation counselor.
17           My practice consists of working with
18           individuals who have multiple types of
19           disabilities, physical learning
20           disabilities, psychological
21           impairments and assisting them with
22           adjustment issues and looking into how
23           their impairments effect their
24           capacity for employment.  We do
25           testing.  We do counseling.  I provide
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

11

```
 1                    A. Winship
 2           case management services for the
 3           Veteran's Administration.  I do what
 4           they call diagnostic vocational
 5           evaluations, which is a series of
 6           testing and career counseling with our
 7           state education department, so
 8           numerous types of things.  With regard
 9           to my license in mental health I do
10           counseling primarily with chronic pain
11           population, anxiety adjustment issues,
12           anger issues and so forth.
13      Q    Okay.  You also provided for this case
14           the two pages in Exhibit 1, prior to
15           your CVR, a list of cases that you
16           have worked on within the last ten
17           years?
18      A    I did, yes.
19      Q    Okay.  And would you agree to provide
20           the full name of all of these cases so
21           they can be reviewed?  I personally
22           can't look these up with this one
23           name.  If you would agree to
24           supplement the list of cases that you
25           have testified in to include the full
```



Alan C. Winship                                    January 6, 2011

12

                              A. Winship

1                    name and the docket number of the case

2                    as it was physically provided?  Would

3                    you agree to do that at some later

4                    date?

5         A          Well, quite frankly, I wouldn't even

6                    know how to begin to do that.  I've

7                    never been asked for anything beyond

8                    what I've provided.

9         Q          You wouldn't have any documents that

10                   would have what's called the style of

11                   the case, that would have both of the

12                   parties names?

13        A          I don't.  If there's a method --

14                   perhaps Mr. Gaji could help me with

15                   that if there's a method of

16                   researching and looking it up, I'd be

17                   more than happy to.

18        Q          Okay.  On any of the -- were all of

19                   these cases in state court?

20        A          The -- I believe the only one that

21                   isn't state court is the Bobak matter

22                   back in '06, which was a state court

23                   in Pennsylvania.

24        Q          Okay.  So it's a state court case,



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                          January 6, 2011

13

```
 1                    A. Winship
 2           just not in New York?
 3      A    That's correct.
 4      Q    The rest of the cases appear to be
 5           state court cases in New York?
 6      A    That's correct.
 7      Q    And what is the Raskin-Weber Jillian
 8           that says Court of Claims, is that
 9           state court as well?
10      A    That's a state court, yes.
11      Q    Okay.  Were any of these cases
12           Americans With Disabilities Act cases?
13      A    No.
14      Q    Okay.  Have you ever testified or
15           given expert testimony in Americans
16           with Disabilities Act cases?
17      A    Beyond four years?
18      Q    Ever.  I mean, this is a list of all
19           the cases that you provided expert
20           testimony in the past ten years,
21           correct?
22      A    That's correct.
23      Q    And none of them are ADA cases,
24           correct?
25      A    That's correct.
```



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

                                                                    14

                              A. Winship
 1
 2      Q    So have you ever provided any
 3           testimony in an ADA case before this
 4           one that we're here for today?
 5      A    I would need to -- I don't have a
 6           record before that of the four-year
 7           period, I delete as they come across.
 8           I've been involved in ADA cases,
 9           whether any of them have gone to
10           court, I don't know off the top of my
11           head.
12      Q    When you say a four-year period, are
13           you taking about four years prior to
14           this?
15      A    No.  I'm talking about my recollection
16           before the four-year period noted on
17           the letter.
18      Q    Okay.  So you're talking about the
19           four-year period before this list of
20           all the cases that -- for the previous
21           ten years?
22      A    Well, four-year or longer.
23      Q    Okay.  But it would be beyond the
24           scope of this ten-year period that
25           you've outlined in your letter,



ESQUIRE
an Alexander Gallo Company

Alan C. Winship                              January 6, 2011

15

```
 1                    A. Winship
 2         correct, is that what you're saying?
 3      A  Well, I only outlined a four-year
 4         period of cases that I testified on.
 5      Q  Okay.  It says -- the first paper of
 6         -- you are correct.  You're correct.
 7         I stand corrected.  I saw the past ten
 8         years and this is the past four years.
 9         So you're saying that you don't have a
10         recollection of any ADA cases in the
11         past beyond this past four years?
12      A  That I've testified on.
13      Q  Okay.  And would you agree to
14         supplement that information to your
15         attorney for this previous ten years?
16             MR. GAJI:  I don't
17             understand the question.
18             MS. HENRY:  Let me
19             rephrase.  Will you agree
20             to supplement the
21             materials provided to
22             include any ADA cases in
23             which you have testified
24             to in the past ten years?
25             MR. GAJI:  Objection.
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                              January 6, 2011

16

```
 1                        A. Winship
 2                MS. HENRY:  Hat's your
 3            objection?
 4                MR. GAJI:  It's beyond
 5            the scope of FRCP.
 6    BY MS. HENRY::
 7        Q    We'll put that to the magistrate then,
 8            but the request is on the table.  Are
 9            you familiar with the legal standards
10            under the Americans With Disabilities
11            Act?
12        A    I am.
13        Q    Okay.  And how are you familiar with
14            the legal standards under the ADA?
15            How did you become familiar with those
16            standards?
17        A    I've attended seminars pertaining to
18            the ADA and I've done training
19            pertaining to the ADA with employers.
20        Q    Are you familiar with the term
21            reasonable accommodation within the
22            legal context of the Americans With
23            Disabilities Act?
24        A    I am.
25        Q    Okay.  And your knowledge, would that
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

17

1                         A. Winship

2             require an employer to change any of

3             the essential functions of the

4             position?

5        A    It would not.

6        Q    In your opinion, would that require an

7             employer to create a new position for

8             an employee that could no longer

9             perform the essential functions of

10            this previous position?

11       A    It would not require that, no.

12       Q    In your opinion, would the ADA require

13            an employer to create a new job for a

14            displaced employee?

15       A    It would not require it, no.

16       Q    Okay.  As an employee -- in your

17            opinion, is an employee required to

18            request or ask for an accommodation?

19       A    The accommodation is a dual -- it's a

20            dialogue, it could be initiated by the

21            employer or the employee.

22       Q    Let me rephrase my question.  Is an

23            employee, in your opinion, required to

24            request an accommodation under the

25            ADA?



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

                                                              18

1                         A. Winship

2        A      Yes.  The onus is on them.

3        Q      What information in generating your

4               report did you have about Federal

5               Express's TRW or temporary return to

6               work program?

7        A      I don't know that there was anything

8               in the records that I have with regard

9               to the TRW program.

10       Q      Okay.  Are you aware that Mr.

11              Verrochio was being examined to return

12              to work not as an courier, but under

13              FedEx's TRW program?

14       A      I am.

15       Q      And are you familiar with the

16              essential functions of a courier at

17              Federal Express?

18       A      Yes.

19       Q      Have you seen any documentation that

20              describes the essential functions?

21       A      No.  I don't believe I have a job

22              description.

23       Q      Okay.  Is it your intent to testify in

24              this case, as to a legal opinion, as

25              to whether FedEx complied with any of



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

19

1                       A. Winship

2            the ADA requirements?

3      A     I think we've already discussed the

4            fact that I'm not going to provide a

5            legal opinion.

6      Q     Okay.  In your report -- do you need a

7            minute?

8      A     No.  Go ahead.

9      Q     On the first page of your report you

10           say that you evaluated Mr. Verrochio

11           on August the 26th of 2010; is that

12           correct?

13     A     Yes.

14     Q     And when you said you evaluated him,

15           what specifically did you do with Mr.

16           Verrochio that day?

17     A     I took a history from him and reviewed

18           medical records and discussed the

19           medical records.

20     Q     Have you read Mr. Verrochio's

21           deposition that was given in this

22           case?

23     A     I don't believe I have his deposition,

24           no.

25     Q     Have you read a deposition of a



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

20

1                          A. Winship

2              gentleman by the name of Steve

3              Donnelly that was given in this case?

4        A     No.

5        Q     Have you spoken to anyone at Federal

6              Express that was involved in this case

7              at all other than myself today?

8        A     No.  I'm sure you're aware that I

9              don't have authorization to speak with

10             anybody at Federal Express.

11       Q     How long would you estimate your

12             evaluation of Mr. Verrochio was?

13       A     In the neighborhood of three hours.

14       Q     Did you perform any medical tests on

15             him?

16       A     No.  I'm not a medical provider.

17       Q     On page seven of your report, the

18             second paragraph from the bottom,

19             you're discussing Gary Williams' note

20             that you reviewed in this case.

21             And Mr. Williams' note says, in the

22             first sentence in the paragraph,

23             Mr. Williams' most recent

24             correspondence is dated July 22nd,

25             2010, at which time Dr. Williams



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

1                        A. Winship

2            noted, I reviewed the job descriptions

3            which you've sent.  I have not been

4            able to locate this particular

5            document.

6            Can you locate it in the files that

7            you were given to review in this case,

8            this particular document?

9        A        (Witness indicating.)

10                      MS. HENRY:  And he has

11                just shown me the letter

12                from July 22, 2010, and

13                it's a letter to Mr. Gaji

14                from Dr. Gary Williams,

15                and I'd like to make this

16                Exhibit Number 2 to the

17                deposition.  We'll get a

18                copy of it and give you

19                your original back.

20                      THE WITNESS:  Sure.

21               From Mr. Gaji to Dr. Gary

22                Williams, was marked for

23                identification.)

24      BY MS. HENRY:

25          Q     Mr. Winship, on page ten of your



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

22

1                    A. Winship

2         report under the employment history

3         section, the first paragraph ends by

4         saying, Mr. Verrochio's personnel file

5         from FedEx was reviewed.

6         I'm going to pass you what has been

7         produced to me by Mr. Gaji as

8         represented to be the personnel

9         records that were produced to you.

10                  MR. GAJI:  Which were

11              produced by you to us.

12                  MS. HENRY:  Fine.  If

13              we could mark this as

14              Exhibit 3 before I produce

15              it to the witness.

16          (At which time, Exhibit 3, Mr.

17              Verrochio's personnel file, was

18              marked for identification.)

19    BY MS. HENRY:

20        Q    If you will -- I realize it's a large

21             amount of documents.  If you would

22             review that briefly and let me know if

23             those appear to be the documents that

24             you considered in evaluating Mr.

25             Verrochio's personnel file for this



1                        A. Winship

2              report.

3        A     Again, it appears to be.  Again, it's,

4              you know, my records and your records

5              are both about two inches thick, so I

6              would assume that they're consistent.

7        Q     But those look familiar, like things

8              that were given to you?

9        A     Yes, certainly.  The records would

10             appear to be the same.

11       Q     Okay.  Thank you.  On page eleven of

12             your report, you have evaluated the

13             job duties performed by a route

14             delivery driver DOT-292.353-010.

15             Where did you get this particular job

16             duty?

17       A     The --

18                   MR. GAJI:  Could you

19             describe that again?

20                   MS. HENRY:  Can the

21             court reporter read it

22             back?

23                   MR. GAJI:  For the

24             record, Mr. Kilker is here

25             now.



ESQUIRE
an Alexander Gallo Company

Alan C. Winship                                      January 6, 2011

24

1              A. Winship

2              (Whereupon, the above-requested

3              question was then read by the

4              reporter.)

5                  THE WITNESS:   The

6              dictionary of occupational

7              titles.

8    BY MS. HENRY:

9        Q     Did you have a copy of that particular

10             occupational title from the dictionary

11             here with you here today?

12       A     A copy of it, no.   I have a copy --

13             the DOT is here.

14       Q     Is this job stipulation in that DOT?

15       A     Yes.

16       Q     Okay.   I would like to make a copy of

17             that from the DOT, the fourth exhibit.

18             We can file that exhibit.   We'll get a

19             copy of that and file it.   The next

20             sentence or the bottom sentence says

21             exert force of twenty to fifty pounds

22             occasionally, ten to twenty-five

23             pounds frequently or up to ten pounds

24             constantly.   Is that something that

25             you generated from this DOT title?



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

A. Winship

1

2    A      Yes.  Everything listed under the

3           transferable skills under the physical

4           demands division, this whole section

5           comes out of the DOT, it describes

6           that job as it's performed generally

7           in the economy, the national economy.

8    Q      Okay.  On page twelve of your report

9           there's a table and the sentence above

10          the table says, during the course of

11          his past employment Mr.  Verrochio has

12          demonstrated the following aptitudes.

13          Where did you generate his aptitudes

14          and the percentile rank of these

15          particular aptitudes for this report?

16   A      The aptitudes and the temperament

17          factors are also from the DOT or the

18          classification of jobs.

19   Q      And as a late filed exhibit, which

20          would be Exhibit Number 5, I would

21          like to have a copy of the

22          documentation that you have included

23          in your report from whatever source, I

24          guess it's the DOT or classification

25          to review that.  It also says on page



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

26

|    |   |                                           |
|----|---|-------------------------------------------|
| 1  |   | A. Winship                                |
| 2  |   | twelve that a transferable skills         |
| 3  |   | analysis was performed using the oasis    |
| 4  |   | transferable skills program, would you    |
| 5  |   | describe what that is to me, please?      |
| 6  | A | That is a computerized analysis of, in    |
| 7  |   | this case, the only occupation that       |
| 8  |   | Mr. Verrochio has performed within the    |
| 9  |   | past fifteen years, and it looks at       |
| 10 |   | what other occupations he may be able     |
| 11 |   | to perform using the type of skills       |
| 12 |   | and temperament factors and aptitudes     |
| 13 |   | that he's developed during the course     |
| 14 |   | of performing the semi-skilled            |
| 15 |   | delivery job.                             |
| 16 | Q | And the next sentence says, Certain        |
| 17 |   | assumptions were made regarding           |
| 18 |   | Mr. Verrochio's residual functioning      |
| 19 |   | capacity and ability based on medical     |
| 20 |   | records reviewed and his past work        |
| 21 |   | history.  Before I ask you about that     |
| 22 |   | particular question, I'm going to go      |
| 23 |   | ahead and get the rest of the             |
| 24 |   | information that you were provided        |
| 25 |   | made as an exhibit to the deposition.     |



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

1              A. Winship

2

3           MS. HENRY:  This next

4        packet is entitled wage

5        earnings and could I have

6        this marked as Exhibit 6,

7        please.

8           (At which time, Exhibit 6, Wage

9        Earnings, was marked for

10        identification.)

11    BY MS. HENRY:

12    Q    And again, I'm going to ask you -- I'm

13        going to produce to you what was

14        produced to me as the information that

15        was given to you as Mr. Verrochio's

16        wage information from Federal Express.

17        And if you would just briefly review

18        that and see if that looks familiar

19        and see if that looks like the

20        information that you were provided in

21        order to generate your opinions for

22        this report.

23    A    It does.

24    Q    Okay.  Thank you.

25           MS. HENRY:  The next



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Alan C. Winship                                    January 6, 2011

28

1           A. Winship

2           exhibit is going to be

3           Exhibit 7, and this is a

4           packet of medical records

5           that was produced to me by

6           Mr. Gaji as a complete

7           packet of the medical

8           records that you were

9           given to review on Mr.

10          Verrochio in generating

11          your opinions in this

12          case.

13       (At which time, Exhibit 7,

14    Complete packet of Mr. Verrochio's

15    medical records, was marked for

16    identification.)

17           MS. HENRY:   This is

18       marked as Exhibit 7.

19           And just for the

20       record, I'll go through.

21       One is the July 20, 2007

22       first choice evaluation

23       independent medical exam

24       by Dr. Kim.

25           Mr. Gaji, there are a



Toll Free: 888.486.4044

ESQUIRE
an Alexander Gallo Company

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

29

    A. Winship

lot of these reports.  Can

we not stipulate that this

is a copy of exactly what

you sent me?

    MR. GAJI:  We just want

to make sure that nothing

is left out that may

become a problem in the

future.

    MS. HENRY:  Okay.  I'll

go through each one of

them then.  The next is

the practitioner's report

of an IME from a

Dr. Arlene Snyder; the

next is a practitioner's

report of an independent

medical exam from Dr.

Belmonte; the next is a

practitioner's report of a

request for information or

response to a request

regarding an independent

medical exam, looks like



Alan C. Winship                                    January 6, 2011

30

```
 1              A.  Winship
 2       it's Charles Rihanna; the
 3       next is a Tier Orthopedics
 4       Associates' report from
 5       6/23/2010; the next group
 6       of documents appears to be
 7       the reports from Tier
 8       Orthopedics Associates;
 9       the first is dated
10       4/20/2010, the last is a
11       report from Lourdes
12       Diagnostic Imaging; the
13       next group of documents is
14       from Southern Tier Pain
15       Management Center in
16       Vestal, New York; the
17       first document dated 6/7
18       of 10, and they're grouped
19       together.  The next group
20       of documents is from the
21       Center for Pain Relief,
22       date of visit 6/2/09,
23       dictated by David
24       Kammerman.  The next
25       packet of medical records
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                              January 6, 2011

31

1        A. Winship

2    is from United Health

3    Services Medical

4    Rehabilitation, the

5    physician is Gary

6    Williams, it's a discharge

7    summary.  And that is the

8    packet of medical

9    documentation that was

10   sent.  There is other

11   documents there are going

12   to be made exhibits later

13   on, but this is the

14   medical records that were

15   sent to me by Mr. Gaji as

16   being the records that

17   were reviewed by Mr.

18   Winship for this

19   deposition.

20       MR. GAJI:  I believe we

21   also provided supplemental

22   medical records.

23       MS. HENRY:  You did,

24   and that's exactly what we

25   were just referencing that



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

32

1                     A. Winship

2              we would be getting to in

3              a minute.

4                   MR. GAJI:  Okay.  Thank

5              you.

6    BY MS. HENRY:

7         Q     All right.  Back to your statement,

8              certain assumptions were made

9              regarding Mr. Verrochio's residual

10             functioning capacity and the ability

11             based on medical records reviewed and

12             his past work history.

13             What assumptions did you make in

14             rendering your opinion in this case?

15         A     The assumptions were that

16             Mr. Verrochio had performed the job

17             that I had identified.

18         Q     Which job is that?

19         A     The sales route driver, and that he

20             had performed it and met all the

21             requisite specific vocational

22             preparations pertaining to that job.

23         Q     In the past?

24         A     Yes.  And there were two assumptions

25             that I made relative to Mr.



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                       January 6, 2011

33

1                          A. Winship
2              Verrochio's post-injury capacity.  One
3              was that he is not able to perform any
4              type of work, and the other is that he
5              is able to perform light duty work
6              using mainly the right upper
7              extremity.
8        Q     Just so I'm understanding you, an
9              assumption that you made, is that an
10             assumption you made or is that a
11             conclusion from your report, that he
12             could not perform any gainful
13             employment?
14       A     Those were the assumptions that I made
15             that led to my conclusion.
16       Q     Okay.  How did you come to that
17             particular assumption?
18       A     The review of the medical records.
19       Q     Okay.  And when you say that he can
20             perform light duty work, that was an
21             assumption that you made as well, is
22             that what you said?
23       A     I said that he is able to perform
24             light duty work using predominantly
25             the right upper extremity.



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

                                                            34

1                           A. Winship
2       Q       And that would be -- that assumption
3               would pertain to his status in
4               September of 2007; is that correct?
5       A       Correct.
6       Q       Okay.  Do you have any opinion --
7               well, actually on page fourteen of
8               your report, the last paragraph says,
9               in my professional opinion, Gabriele
10              Verrochio is not capable of sustaining
11              any gainful employment based on the
12              exertional and non-exertional
13              impairments that Mr.  Verrochio
14              continues to experience.  Now, that is
15              your conclusion from this report,
16              correct?
17      A       Correct.
18      Q       And that is based on the assumptions
19              that were made based on your review of
20              the medical records up until that
21              date, correct?
22      A       That's correct.
23      Q       Okay.  And you also -- the last
24              sentence says, Mr. Verrochio will not
25              be capable of sustaining gainful


ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                              January 6, 2011

35

1                    A. Winship

2          employment in the future; is that

3          correct?

4      A   That's correct.

5      Q   And that is your conclusion as well,

6          correct?

7      A   That's correct.  That conclusion is

8          relevant to the date that I provided

9          this report, August 30th, 2010.

10     Q   Okay.  Do you have any opinions as to

11         whether Mr. Verrochio was capable of

12         lifting up to seventy-five pounds

13         anytime between 2007 and the date of

14         your report, August 30th, 2010?

15     A   Without straying into the medical

16         area, it would be fairly clear from my

17         interpretation of the records that he

18         was not able to lift seventy-five

19         pounds.

20     Q   Okay.  Do you have an opinion based on

21         review of the medical records of

22         whether Mr. Verrochio would have the

23         full range of motion in both of his

24         arms at anytime between September 2007

25         and the date of your report, August



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                                   January 6, 2011

                                                                          36

                              A. Winship

1                             30th, 2010?

2        A      Full range of motion relative to what?

3        Q      To driving a commercial vehicle.

4        A      Yeah.  I don't think that his range of

5               motion would have precluded him from

6               driving a vehicle.

7        Q      The range of motion of both of his

8               arms would not have precluded him from

9               driving a commercial vehicle?

10       A      No.

11       Q      Are you familiar with the Department

12              of Transportation requirements for

13              driving a commercial vehicle?

14       A      I am.

15       Q      Okay.  What kind of range of motion do

16              they require in the arms?

17       A      Specific range of motion measurement?

18       Q      If you've got specific ones, that's

19              great, otherwise what is your

20              awareness?

21       A      Well, you have to be able to hold the

22              -- you have to be able to demonstrate

23              the capacity to hold your hands on a

24              steering wheel at ten o'clock and two



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

37

1                        A. Winship

2              o'clock position or a four o'clock and

3              eight o'clock position.

4         Q    Do the commercial vehicle driving

5              requirements require any specific

6              abilities with regards to shifting

7              gears and turning and range of motion

8              in that regard?

9         A    Yes.  Certainly you'd have to be able

10             to obviously move your hands on the

11             wheel and reach for the shifter, the

12             gear shift.

13        Q    Is that more strenuous than a regular

14             vehicle?

15        A    I guess it would depend on the vehicle

16             you're driving.  Most of the trucks

17             now are power assist.  The shifting is

18             done with the right hand.  He doesn't

19             have an impairment with the right

20             hand, his impairment is with the left.

21             I'm sorry, he does have right shoulder

22             impairment too.

23        Q    Do you have an opinion whether Mr.

24             Verrochio would qualify under the DOT

25             standards to drive a commercial



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                              January 6, 2011

38

1                    A. Winship

2          vehicle today?

3    A     No, he would not.

4    Q     Okay.  But your opinion is that he

5          could have at some point between

6          September of 2007 and August 30th of

7          2010?

8    A     I don't recall stating that.

9    Q     Okay.  Well, let me ask you that

10         question.  Could Mr. Verrochio have

11         qualified to drive a commercial

12         vehicle at any point in time between

13         September 2007 and August 30th of

14         2010?

15   A     By commercial vehicle, you're talking

16         about a tractor-trailer truck?

17   Q     I'm taking about --

18   A     A commercial delivery truck?

19   Q     A commercial delivery truck.

20   A     No, he could not.

21              MS. HENRY:  Okay.  I'm

22              going to pass you what has

23              been provided to me as an

24              addendum report and it

25              will be Exhibit 8.



Alan C. Winship                                    January 6, 2011

39

1                         A. Winship

2              (At which time, Exhibit 8,

3              Addendum Report, was marked for

4              identification.)

5    BY MS. HENRY:

6         Q    Mr. Winship, if you will review this

7              and let me know if in fact that is a

8              copy of an addendum report that you

9              generated in this case?

10        A    It is.

11        Q    And the date on this report is

12             November 23rd, 2010; is that correct?

13        A    That's correct.

14        Q    And the first sentence says, at your

15             request, and I assume you're speaking

16             to Mr. Gaji, correct?

17        A    That's correct.

18        Q    At your request additional medical

19             records and Social Security

20             determination were reviewed.  And just

21             to be sure for the record, when you

22             went through this report you outlined

23             the review of the additional medical

24             records you reviewed, and one of them,

25             the first one, was November 1st 2010,



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

40

1                        A. Winship

2              a note from Dr. Angela Crawford; is

3              that correct?

4        A     Yes, it is.

5        Q     And the second one on the second page

6              is a note from November the 3rd, 2010

7              from Gary Williams; is that correct?

8        A     Yes.

9        Q     Okay.  And a little further down the

10             page it says, on November the 3rd,

11             2010 Matthew Bennett offered the

12             follow opinion, and that's something

13             you reviewed as well, correct?

14       A     I did, yes.

15       Q     Okay.  The last paragraph on the page

16             says, on November 11th, 2010 Dr. David

17             Kammerman offered the following

18             opinion; is that correct?

19       A     Yes.

20       Q     And then on page three, the last

21             paragraph before the impression

22             section, it says, I also reviewed a

23             copy of the Social Security

24             Administration decision of March the

25             26th, 2010 awarding Mr. Verrochio



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

41

1                    A. Winship

2           Social Security Disability benefits;

3           is that correct?

4       A       Yes, it is.

5                    MS. HENRY:  Okay.  I'm

6           now going to mark for the

7           record what is going to be

8           Exhibit 9 and it is for

9           your benefit, Mr. Gaji and

10          Mr. Kilker.  It is a copy

11          of the letter sent to me

12          by Mr. Gaji, dated

13          November 23rd, 2010, where

14          it lists -- it says

15          thirteen, but there are

16          actually fourteen items

17          that were produced in the

18          packet that is the

19          exhibit.  I am only

20          including numbers nine

21          through fourteen because

22          the additional medical

23          records are something that

24          was already marked in this

25          case as Exhibit 7.



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

42

```
 1                      A. Winship

 2                      (At which time, Exhibit 9, Copy of

 3                      letter dated November 23, 2010 sent

 4                      by Mr. Gaji, was marked for

 5                      identification.)

 6      BY MS. HENRY:

 7          Q       Mr. Winship, I'm going to give you

 8                  that Exhibit 9 to review, and if you

 9                  will look at the documentation that

10                  was provided to me and let me know if

11                  these are the medical records that you

12                  considered and described in your

13                  addendum report.

14          A       They are.

15          Q       Okay.  Do you have a copy of what was

16                  supplied to you as the Social Security

17                  Administration decision of March 26th,

18                  2010?

19          A       Yes.

20          Q       Okay.  May I ask you to get that out

21                  because I never received a copy of

22                  that from Mr. Gaji.  Well, what we can

23                  do is make it a late filed exhibit and

24                  that will give you some time off the

25                  record to look for it if you need to.
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                          January 6, 2011

43

1                    A. Winship

2          That would be Exhibit 10.  And in

3          generating this addendum report, are

4          these records the only additional

5          records that you considered in this

6          report?

7     A    Yes.

8     Q    Okay.  And does your opinion -- does

9          this addendum report change your

10         opinion as you previously testified to

11         in this deposition about Mr.

12         Verrochio?

13    A    No.

14                   MS. HENRY:  Okay.  I

15              don't have any further

16              questions.

17                   MR. GAJI:  Okay.  Thank

18              you.

19                   MS. HENRY:  We'll have

20              these exhibits marked.

21              (At which time, Exhibit 4, DOT job

22              description, was marked for

23              identification.)

24              (At which time, Exhibit 5,

25              Detailed job specialty report, was



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

44

1              A. Winship

2         marked for identification.)

3           (At which time, Exhibit 10, Copy

4         of Social Security Administration

5         decision dated March 26, 2010, was

6         marked for identification.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

46

1

2                         C E R T I F I C A T E

3          STATE OF_____:

4          COUNTY/CITY OF_____:

5              Before me, this day, personally

6     appeared Alan C. Winship, who, being duly sworn,

7     states that the foregoing transcript of his/her

8     Deposition, taken in the matter, on the date,

9     and at the time and place set out on the title

10    page hereof, constitutes a true and accurate

11    transcript of said deposition.

12

13              _____

14                   Alan C. Winship

15

16

17

18         Signed and subscribed to before me

19    this_____day of_____,20____.

       _____
20
      NOTARY PUBLIC, STATE OF NEW YORK

21

22

23

24

25



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

50

I N D E X

TO TESTIMONY

WITNESS                    BY                    PAGE
ALAN C. WINSHIP           MS. HENRY               4

TO EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Copy of original Vocational Evaluation | 7 |
| 2 | Letter from Mr. Gaji to Dr. Gary Williams | 21 |
| 3 | Mr. Verrochio's personnel file | 22 |
| 4 | DOT job description | 43 |
| 5 | Detailed job specialty report | 44 |
| 6 | Wage Earnings | 27 |
| 7 | Complete packet of Mr. Verrochio's medical records | 28 |
| 8 | Addendum Report | 39 |
| 9 | Copy of letter dated November 23, 2010 sent by Mr. Gaji | 42 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

51

1

2      TO EXHIBITS   (cont'd)

3      EXHIBIT              DESCRIPTION              PAGE
       10                   Copy of Social Security          44
4                           Administration decision
                            dated March 26, 2010

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


ESQUIRE
an Alexander Gallo Company

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Alan C. Winship                                    January 6, 2011

52

1

2                        CERTIFICATE

3

4          I, DEBORAH DELELYS, a Court Reporter

5     and Notary Public in and for the State of New

6     York, do hereby certify that I recorded

7     stenographically the proceedings herein at the

8     time and place noted in the heading hereof, and

9     that the foregoing transcript is true and

10    accurate to the best of my knowledge, skill and

11    ability.

12          IN WITNESS WHEREOF, I have hereunto

13    set my hand.

14

15

16          

17                   DEBORAH DELELYS

18

19

20

21

22

23

24

25

Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company