# EXHIBIT C

# Winship & Associates
### 40 Gardenville Parkway, Suite 200
### West Seneca, New York 14224

Alan C. Winship
Rheannon K. Yuscinsky

**CONFIDENTIAL REPORT**
**FOR PROFESSIONAL USE ONLY**

November 23, 2010

Feyi O. Gaji
Attorney At Law
36 Oak Street
Binghamton, New York 13905

Re: Gabriele E. Verrocchio
W&A File No: 05831

## ADDENDUM REPORT

### REASON FOR REFERRAL

Gabriele Verrocchio was initially evaluated on August 26, 2010. My opinions are contained in a report of August 30, 2010. At your request additional medical records and a Social Security determination were reviewed.

### REVIEW OF MEDICAL RECORDS

On November 1, 2010, Angela L. Crawford, Ph.D. offered the following opinion, *"Please note that Mr. Verrocchio sustained physical injuries, as well as cognitive impairments and emotional adjustment difficulties as a result of his injury. As a licensed psychologist, I can only comment with respect to the emotional difficulties, as this was the focus of his treatment with me. He would need input from his other specialists regarding his physical abilities.*

*With regard to his emotional difficulties (depression, anxiety, frustration), it is likely that with appropriate, timely treatment of his injuries, he would most likely show improvements that would enable him to function appropriately from an emotional standpoint. The Billing Clerk position, Customer Service Representative, and Supplemental Field Office seemed to be positions that he may have been suitable for with appropriate time to heal physically and emotionally."*

Alan Winship, Mental Health Counseling, P.C.
Phone 716 668-3710   Fax 716 656-0788


EXHIBIT 8   1-6-11

Verrocchio, Gabriele E.
Page 2
November 23, 2010

On November 3, 2010, Gary G. Williams, O.D. offered the following opinion, *"Vision therapy was recommended for Mr. Verrocchio to rehabilitate his visual system and to reintegrate his ability to use visual information for daily tasks. The traumatic brain injury he sustained as a result of the accident impaired his ability to function in an everyday environment without neurological or physical adaptations such as, but not limited to special lenses, noise reduction, time restraints, ergonomically correct workspace, frequent physical breaks, and adequate recovery times.*

| Adaptation: | Reasons: |
|---|---|
| Polarized Light Reduction Lenses | Photophobia due to trauma to the occipital lobes |
| Noise Reduction (i.e. earplugs or headset) | Overstimulation of the auditory sensory system |
| Time Restraints (i.e. limited hours and no overtime) | Limited neurological and physical stamina |
| Ergonomically correct workspace | Reduced proprioceptive stimulation for visual, neurological, and physical stamina |
| Frequent physical breaks (i.e. time away from work station | Increase the amount of time to adequately sustain productivity |

*Mr. Verrocchio could be productive in a workplace environment given appropriate treatments, timely treatment of his injuries, and accommodations in the workplace. The jobs that were enclosed with your letter would be suitable with the consideration of the above stated information."*

On November 3, 2010, Matthew T. Bennett, M.D. offered the following opinion, *"You have asked for response as to the suitability of job descriptions for Gabe Verrocchio. You have included several job descriptions that Gabe could potentially do.*

*I have had the opportunity to review these job descriptions. I believe that Gabe could perform these activities had he had sufficient time to recuperate with reasonable accommodations given the nature of his injuries. Specifically enclosed in this packet was a manager, owner operator recruiting, supplemental field office, customer service representative, billing clerk-part time. To reiterate, I think given enough time, Gabe would potentially be capable of performing any of these jobs."*

On November 11, 2010, David Kammerman, M.D. offered the following opinion, *"The first job description was manager, owner, and operator recruiting; the second one was supplemental field office; the third one was customer service representative; and the last was billing clerk, part-time*

Verrocchio, Gabriele E.
Page 3
November 23, 2010

*I have reviewed the job requirements for these three positions as supplied to me. None of the jobs requires activities, which would be unable to be performed by Mr. Verrochio. He is suffering from headache and chronic cervical pain as well as visual difficulties and referred pain into the left arm and shoulder consistent with radiculopathy. As such, it would be ill advised for him to do repetitive reaching activities with his upper limbs, heavy lifting, repetitive cervical flexion, extension, and rotational movements.*

*The job requirements as described to me would not require these kind of activities.*

*It is therefore my opinion that if Federal Express had allowed the patient sufficient time to recuperate and offered a reasonable accommodation given the nature of his injuries, that he may have been able to return to work. His original injury occurred on December 23, 2006 and he was let go from his employer in September 2007."*

I also reviewed a copy of the Social Security Administration Decision of March 26, 2010, awarding Mr. Verrocchio Social Security disability benefits.

IMPRESSIONS

The updated medical reports from Dr. Bennett, Dr. Kammerman, Dr. Crawford and Dr. Williams, reinforce the opinion that I initially offered in my report of August 30, 2010. Mr. Verrocchio received correspondence from Stephen Donnelly of FedEx on August 29, 2007, directing Mr. Verrocchio to return to work. At that point in time Mr. Verrocchio was still undergoing treatment and in fact all of his impairments had not been fully diagnosed. Dr. Kammerman was performing cervical nerve root blocks. Dr. Bennett was evaluating Mr. Verrocchio's left shoulder injury and performed surgery on January 18, 2008. The extent of Mr. Verrocchio's visual disturbance had not been fully evaluated. Mr. Verrocchio was under active psychological treatment.

I again point out the fact that Mr. Verrocchio contacted Mr. Donnelly on August 29, 2007, to indicate his concern that his treating physicians had advised against a return to work. Rather than make an attempt to discuss accommodations, the nature of the job tasks that Mr. Verrocchio would be returning to or show any understanding of Mr. Verrocchio's concern regarding how a return to work may affect his medical status, Mr. Donnelly sent a termination letter to Mr. Verrocchio dated September 14, 2007.

As noted in my report there are standard methods by which this type of impasse could have been productively resolved. Mr. Donnelly, or the case manager employed by FedEx could have suggested that Mr. Verrocchio be referred for a Functional Capacity Evaluation. This type of the assessment could have addressed Mr. Verrocchio's capacity to perform the specific job or jobs that FedEx had identified for Mr. Verrocchio to return to. It remains my professional opinion that FedEx demonstrated a lack of meaningful

Verrocchio, Gabriele E.
Page 4
November 23, 2010

dialogue and serious attempts to resolve the return to work issues that led to Mr. Verrocchio's termination on September 14, 2007.

I do not consider there to be any conflict with regard to the failure of FedEx to adequately work with and potentially accommodate Mr. Verrocchio in a return to work in late 2007 and the Social Security decision in March 2009. Appropriate early accommodation would have provided Mr. Verrocchio with a work situation that would have minimized the physical strains that he would encounter in the workplace. Suitable accommodation would also have been extremely beneficial for Mr. Verrocchio from a psychological standpoint.

You have indicated that FedEx would like copies of the materials I relied on in forming my opinion. You further noted that there were three external sources, which were referred to in my report. More specific identification of what sources are being requested would have been helpful. Hopefully, the following information will resolve these questions. Oasys is a computerized method of performing transferable skills analysis. I identified in my report the occupations that were used in this transferable skills analysis. The results of the transferable skills analysis are contained on page 13 of my report. On page 14 of my report I quoted vocational strategies and accommodations for individuals with chronic pain disorder. This quote is footnoted with the author and publisher identified. Specifically the text is Vocational Impact of Psychiatric Disorders A Guide for Rehabilitation Professionals, Gary L. Fischler, Ph.D., Nan Booth, MSW, MPH. The publisher is Aspen Publishers, Inc., 1999. I am not sure what the third external source refers to. The DOT codes referenced on page 11 were obtained from the Dictionary Occupational Titles, Fourth Edition. The United States Department of Labor Employment and Training Administration originally published this. More recently, JIST Works, Inc. 720 N. Parke Avenue Indianapolis, IN 46202-3431, has published it. As I am sure you are aware, the latter two sources may not be copied without copyrighted infringement.

The opinions contained in this report are within a reasonable degree of vocational certainty. They are based on my evaluation of Gabriele Verrocchio, review of the records provided, research-utilizing resources widely accepted within the field of vocational rehabilitation and 38 years of experience in the field of physical and vocational rehabilitation. If I may be of further assistance, please feel free to contact me at your convenience.

Sincerely,

Alan C. Winship, MS Ed, CRC, D-ABVE, CLCP
Licensed Mental Health Counselor
Fellow-American Academy of Pain Management