UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GABRIELE E. VERROCCHIO,

                              Plaintiff,

        v.                                                  3:09-cv-1376

FEDERAL EXPRESS CORPORATION,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Gabriele Verrocchio ("Plaintiff") commenced the instant action against Defendant Federal Express Corporation ("Defendant") asserting a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and for breach of contract. By Decision and Order dated March 3, 2011, the Court granted Defendant's motion for summary judgment and dismissed Plaintiff's claims.

        Plaintiff now moves for reconsideration on the ground that the Court erroneously concluded that Plaintiff failed to timely submit opposition papers. In support of his motion, Plaintiff contends that: (1) the Court granted Defendant's motion "on the basis of the failure of Plaintiff to file a response in a timely manner;" (2) papers in opposition to the motion were not due until March 8, 2011; and (3) the Court's contention that Plaintiff failed to timely submit opposition papers "was probably based upon an administrative snafu."

        The standard for granting a motion for reconsideration is strict. Reconsideration will "generally be denied unless the moving party can point to controlling decisions or data

that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255 (2d Cir. 1995). The Northern District of New York "recognizes only three possible grounds upon which a motion for reconsideration may be granted: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct clear error of law to prevent manifest injustice." U.S. v. Li, 2006 WL 2375475, at *1 (N.D.N.Y. 2006). Plaintiff does not satisfy any of these bases for reconsideration. There has been no intervening change in controlling law, Plaintiff does not offer new evidence not previously available, and Plaintiff does not identify any clear error of law. Rather, Plaintiff contends that the Court erroneously required his opposition papers to be filed on or before February 25, 2011.

      Plaintiff's contentions are incorrect. First, although Plaintiff had not submitted opposition papers by the time the Court issued its March 3, 2011 Decision and Order, Defendant's motion was not granted simply because of the lack of opposition papers. Rather, the Court addressed the merits of Defendant's motion based on the record before it and issued its decision accordingly. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004) ("We hold that Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles. Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").

      Second, opposition papers were due on or before February 25, 2011. When Defendant filed its motion on January 28, 2011, it erroneously indicated a return date of March 25, 2011. Using March 25, 2011 as a return date, opposition papers would have been

due on or before March 8, 2011.  The problem is that, under the Court's local rules, parties do not get to pick whatever return day they want.  Rather, the determination of the appropriate return date is made in accordance with N.D.N.Y.L.R. 7.1.  That Rule specifically provides that "[u]nless the Court directs otherwise, the moving party shall make its motion returnable at the **next regularly scheduled motion date at least thirty-one days from the date the moving party files and serves its motion**."  (emphasis in original).  The Rule continues to state that "[i]f the return date the moving party selects is not the next regularly scheduled motion date . . . the Clerk will set the proper return date and notify the parties."

Here, Defendant filed its motion papers on January 28, 2011.  Applying Rule 7.1, the proper return date was not March 25, 2011, but March 14, 2011.  The Clerk of the Court properly noticed this error.  Accordingly, on the same day that Defendant filed the motion (January 28, 2011), the Clerk issued the following text notice that was electronically sent to Plaintiff:

> COURT TEXT NOTICE resetting Defendant's 25 MOTION for Summary Judgment and 26 MOTION Motion to Exclude Expert Alan C. Winship and any other Expert not Properly Noticed in this Case for Senior Judge McAvoy's 3/14/2011 motion calendar at 10:00am in Albany. **Response to Motion due by 2/25/2011**; Reply to Response to Motion due by 3/3/2011.(amt) (Entered: 01/28/2011).

See January 28, 2011 Dkt. entry (emphasis added).

Thus, opposition papers were not due by March 8, but were due by February 25, 2011.  In accordance with the local rules, Plaintiff was notified of that fact.

Third, based on the foregoing discussion, it is clear that there was no "administrative snafu."  Plaintiff should have been aware that, pursuant to Rule 7.1, Defendant did not select a proper return date.  Also, in light of the text notice, Plaintiff should

- 3 -

have been aware that the Court changed the return date and the date opposition papers were due. Accordingly, the failure to timely file opposition papers falls on Plaintiff.

Treating Plaintiff's motion as a request for an extension of time under Rule 6(b), his motion must be denied. The burden of demonstrating excusable neglect warranting an extension of time under Fed. R. Civ. P. 6(b) is on Plaintiff. In re Enron Corp., 419 F.3d 115, 121 (2d Cir. 2005). Here, Plaintiff argues that there was no neglect and that his papers were timely. As discussed, however, Plaintiff is incorrect. The cases hold that, where the rule is clear, law office failure does not constitute excusable neglect warranting an extension of time to submit opposition papers. In re Johns-Manville Corp., 476 F.3d 118, 124 (2d Cir. 2007); In re Enron Corp., 419 F.3d 115, 122-23; Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003); see also Redhead v. Conference of Seventh-Day Adventists, 360 Fed. Appx. 232 (2d Cir. 2010); Shorette v. Harrington, 234 Fed. Appx. 3 (2d Cir. 2007). "'[I]nadvertance, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable neglect."'" In re Enron Corp., 419 F.3d 115, 125 (2d Cir. 2005) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs, 507 U.S. 380, 392 (1993)). As discussed, the Court's local rules are clear and Plaintiff was specifically advised of the new return date and the date opposition papers were due. Thus, even construing Plaintiff's motion for reconsideration as a motion for an extension of time to file opposition papers, the Court finds that, considering the Pioneer factors, the "reason for the delay" factor outweighs the other factors and does not warrant granting an extension of time. Accordingly, the motion for an extension of time is denied.

Even considering Plaintiff's untimely opposition papers, they are insufficient to defeat Defendant's motion for summary judgment. Plaintiff first states that, based on some conflicting notes from Dr. Kammerman, there is a triable issue of fact whether Plaintiff was

able to return to light duty in August or September 2007.  Assuming, *arguendo*, that Plaintiff's physicians stated that Plaintiff was unable to perform any work (including light duty) in August or September 2007, that does not alter the fact that Plaintiff was, at that time, unable to perform the essential functions of the courier job and there was no time within which it could reasonably be expected that Plaintiff would return to work.[1]  In any event, according to Dr. Kammerman's September 7, 2007 note, Plaintiff was able to perform light work subject to restrictions.  See n.1 *supra*.  Nevertheless, Plaintiff never appeared for light duty.

       Plaintiff also contends that there is a triable issue of fact whether Steven Donnelly, who signed Plaintiff's termination letter, responded to Plaintiff's telephone calls in the summer of 2007.  The record evidence is that, generally speaking, Plaintiff and Donnelly were "in constant communication" and had many conversations while Plaintiff was out on leave.  Plaintiff did testify that he sought to speak with Donnelly concerning the IME results, but that Donnelly never returned Plaintiff's phone calls before issuing the letter placing him in the Temporary Return to Work ("TRW") program.  Regardless of whether Donnelly returned Plaintiff's phone calls, Plaintiff does not point to any evidence creating a triable issue of fact whether he showed up for work as required under the TRW program, whether he requested reasonable accommodations to perform light duty under the TRW program, that he was then capable of performing the essential functions of the courier position job (or the light duty

---

[1] Indeed, in his opposition papers, Plaintiff submits a note from Dr. Bennett stating that Plaintiff is "out of work due to the fact that we are considering surgery." Another note from Dr. Bennett states that Plaintiff would be unable to work until October 5, 2007. A note from Dr. Kammerman that appears to be dated August 30, 2007, simply states that Plaintiff "is unable to work [at] this time" and that he would be re-evaluated in four weeks. A September 7, 2007 note from Dr. Kammerman restricts Plaintiff to lifting nor more than 15 pounds, standing more than a half hour, or sitting for more than an hour at a time and that he "remains marked disability temporarily."

position), or that there was a reasonably foreseeable time when he would be able to perform the essential functions of his job.[2]

Lastly, Plaintiff submits letters from various of his physicians opining that Plaintiff could have performed certain job positions if he had been allowed sufficient time to recuperate. Defendant moves to exclude these letters on the ground that they constitute expert opinions for which Plaintiff did not file the report required by Rule 26(a)(2)(B). The Court agrees with Defendant. These letters constitute expert opinion testimony outside of the treating physician exception. When a treating physician's opinion testimony extends beyond the facts disclosed during care and treatment and the physician is requested to develop opinion testimony, then the physician is subject to the provisions of Rule 26(a)(2)(B). Hahnel v. United States, 2011 WL 939056, at *8 (W.D.N.Y. 2011).

Here, the opinions stated in the letters submitted by Plaintiff were the physician's responses to letters sent by Plaintiff's counsel. Counsel sent the doctors letters asking their "opinion on the suitability of any of the enclosed jobs for Gabe Verrocchio if Federal Express had allowed him sufficient time to recuperate with reasonable accommodation given the nature of his injuries." Attached to counsel's letter were various job descriptions. The physicians did not obtain the information in the job descriptions during the course of treating Plaintiff. Further, there is nothing in the record before the Court tending to suggest that these job descriptions were from Defendant. Thus, these opinions extend beyond facts elicited during the care and treatment of Plaintiff. It is, thus, clear that Plaintiff was attempting to

---

[2] To the contrary, it is Plaintiff's position that he was unable to work in any capacity through the date of his termination.

obtain expert opinions that are subject to Rule 26(a)(2)(B). Because Plaintiff did not submit the required report, the letters must be excluded.

For all the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. IT IS SO ORDERED.

Dated: April 12, 2011

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge